[No. 43963-4-I.   Division One.   December 20, 1999.]

ROBERT B. CAROFF ET AL., *Appellants*, v. FARMERS INSURANCE COMPANY OF WASHINGTON ET AL., *Respondents*.

*John C. Belcher* (of *Belcher, Swanson, Lackey, Doran, Lewis & Robertson*), for appellants.

*Sidney R. Snyder Jr.* (of *Merrick, Hofstedt & Lindsey*), for respondents.

¶1 AGID, A.C.J. — This appeal requires us to determine the effect of a severability clause on exclusions that preclude coverage for injury caused by intentional acts of "an insured" and for injury arising out of actual, alleged, or threatened child molestation by "any insured." The Caroffs argue that the severability clause, which says the policy applies to each insured separately, extends coverage to insureds who did not commit the excluded acts even though the exclusions apply to acts of "an insured" or "any insured." When the parties filed cross motions for summary judgment, the trial court granted Farmers' motion and denied the Caroffs'. We hold that the specific, all inclusive exclusions bar coverage here and are neither negated nor rendered ambiguous by the general severability clause and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Kris Trenouth, the teenage son of Roland and Bonnie Trenouth, sexually molested John Doe, the three-year-old son of Robert and Maria Caroff, and pleaded guilty to indecent liberties. The Caroffs then brought a negligence suit against the Trenouths. The Caroffs alleged that the Trenouths were negligent in supervising the interactions between Kris and John Doe and that this negligence was a proximate cause of the severe emotional distress they suffered as a result of John Doe's injury. The Trenouths tendered defense of the suit to Farmers Insurance Company of Washington and Farmers Insurance Exchange (Farmers), with which they held a homeowners and an umbrella policy respectively. Roland, Bonnie, and Kris Trenouth are "insureds" under both policies. Farmers re-

fused the tender, relying on the exclusions for intentional acts and child molestation by "an insured" and "any insured."[1]

¶3 The parties settled the suit by entering into a consent judgment against the Trenouths for $1.3 million. Despite Farmers' earlier denial of coverage, the judgment was enforceable only against the Trenouths' insurance policies with Farmers. They assigned their rights under the Farmers policies to the Caroffs, and the Caroffs brought suit against Farmers to recover on the judgment. The Caroffs then moved for summary judgment, contending that the severability clause in the Farmers policies extends coverage to the Trenouths despite the policies' exclusions for child molestation by "any insured" and intentional acts by "an insured." In its cross motion for summary judgment, Farmers argued that the intentional acts and child molestation exclusions bar coverage for the Trenouths because the severability clause neither negates these exclusions nor renders them ambiguous.

## DISCUSSION

¶4 When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court.[2] The parties submitted an agreed statement of facts to the trial court, and the only issue before it was the proper interpretation of the Farmers policies. Interpretation of an insurance contract is a matter of law which we review de novo.[3]

¶5 The Caroffs first assert that Farmers has a duty to cover their claim based on the coverage language of the

---

[1] The record contains a letter rejecting the tender of defense only under the umbrella policy. Presumably Farmers also rejected a defense under the homeowners policy since the Agreed Statement of Facts in the trial court said that Farmers "refused to defend the Trenouths."

[2] *Welch v. Southland Corp.*, 134 Wn.2d 629, 632, 952 P.2d 162 (1998).

[3] *Country Mut. Ins. Co. v. McCauley*, 95 Wn. App. 306, 308, 974 P.2d 1288 (citing *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 797, 881 P.2d 1020 (1994)), *review denied*, 139 Wn.2d 1004 (1999).

policies.[4] But each of the policies also contains exclusions for intentional acts and child molestation which clearly bar coverage because Kris Trenouth, who the parties agree is an insured under both policies, engaged in the very behavior, intentional acts and child molestation, which is excluded. The homeowners policy's child molestation exclusion reads:

> We do not cover actual or alleged injury or medical expenses caused by or arising out of the actual, alleged, or threatened molestation of a child by:
>
> 1. any insured; or
> 2. any employee of the insured; or
> 3. any volunteer, person for hire, or any other person who is acting or appears to be acting on behalf of any insured.
>
> Molestation includes but is not limited to any act of sexual misconduct, sexual molestation or physical or mental abuse of a minor.
>
> We have no duty to defend or settle any molestation claim or suit against any insured, employee of any insured, or any other person.[5]

The umbrella policy's child molestation exclusion states:

> We do not cover:
>
> . . . .
>
> 17. The actual or alleged injury or medical expenses caused by or arising out of the actual, alleged, or threatened molestation of a child by:
>
> 1. any insured; or
> 2. any employee of any insured; or
> 3. any volunteer, person for hire, or any other person who is acting or who appears to be acting on behalf of any insured.

---

[4] The homeowners policy provides: "We shall pay all damages from an occurrence which the insured is legally liable to pay because of bodily injury . . . covered by this policy." The umbrella policy states: "This coverage is worldwide. We will pay damages on your behalf, subject to the exclusions." (Emphasis omitted.)

[5] (Emphasis omitted.)

We have no duty to defend or settle any molestation claim or suit against any insured, employee, or any other person.[6]

The homeowners policy's intentional act exclusion provides:

We do not cover bodily injury or property damage:

. . . .

3. Either:

a. caused intentionally by or at the direction of an insured, or

b. resulting from any occurrence caused by an intentional act of an insured person where the results are reasonably foreseeable.[7]

The umbrella policy's intentional act exclusion states:

We do not cover:

. . . .

4. Personal injury or property damage which is either:

a. caused intentionally by or at the direction of an insured; or

b. results from any occurrence caused by an intentional act of any insured where the results are reasonably foreseeable.[8]

¶6 Standing alone, these exclusions clearly exclude coverage based on Kris's actions because the broad phrases "any insured" and "an insured" make coverage for all insureds contingent upon the actions of any one insured.[9] But the Caroffs also claim that, when the exclusions are read together with the severability clause in each policy, an issue arises as to their proper interpretation. The homeowners policy's severability clause states:

---

[6] (Emphasis omitted.)

[7] (Emphasis omitted.)

[8] (Emphasis omitted.)

[9] *See Farmers Ins. Co. of Wash. v. Hembree*, 54 Wn. App. 195, 200-01, 773 P.2d 105 (an exclusion for intentional acts of "an insured" precludes coverage for all insureds when the intentional acts of *an* insured gave rise to the injury or damage), *review denied*, 113 Wn.2d 1011 (1989). The phrase "any insured" in an exclusionary clause is even more specific, and the same rule applies.

> This insurance applies separately to each insured. This condition does not increase our limit of liability for any one occurrence.[10]

The umbrella policy's severability clause reads:

> This insurance applies separately to each person insured. This provision shall not increase our liability limit for one occurrence.[11]

The Caroffs argue that the severability clauses are in tension with the exclusions because the exclusions bar coverage for all insureds based on the acts of any one insured, contradicting the principle that there is separate coverage for each insured.

¶7 We are required to consider the contract in its entirety and give effect to each policy provision.[12] We interpret insurance contracts as an average insurance purchaser would understand them and give undefined terms their plain, ordinary, and popular meaning.[13] If the language in an insurance contract is clear and unambiguous, we must enforce it as written and may not modify it or create an ambiguity where none exists.[14] If a policy provision is ambiguous, the interpretation most favorable to the insured applies.[15] A provision is ambiguous if, on its face, it is fairly susceptible to more than one reasonable interpretation.[16]

¶8 The child molestation exclusions are unambiguous and comprehensive. Both policies clearly state that "actual or alleged injury or medical expenses caused by or *arising*

---

[10] (Emphasis omitted.)

[11] (Emphasis omitted.)

[12] *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997).

[13] *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784, 958 P.2d 990 (1998).

[14] *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wn.2d 713, 721, 952 P.2d 157 (1998).

[15] *Daley*, 135 Wn.2d at 784.

[16] *Id.*

*out of the actual, alleged, or threatened molestation of a child by . . . any insured"* is not covered.[17] In contrast, the severability clauses merely announce in general language that the policies apply separately to each insured. As such, they do not override the explicit provisions in the child molestation exclusions or make those exclusions ambiguous. The average insurance purchaser would know from the explicit language of the child molestation exclusions that, despite the severability clauses, Farmers will not cover any suits or claims arising out of child molestation by any insured. The trial court correctly ruled that the Farmers policies' child molestation exclusions preclude coverage and the general language of the severability clauses does not render the exclusions ambiguous.[18]

¶9 We agree with a recent decision from the Supreme Court of North Dakota which distinguished between the specific nature of an exclusion for injury from sexual molestation and the more general severability provision:

> [A] provision such as the exclusion dealing specifically with sexual molestation of children prevails over the more general severability clause. Moreover, "[t]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded."[19]

---

[17] (Emphasis added.)

[18] In *Taryn E.F. ex rel. Grunewald v. Joshua M.C.*, a Wisconsin appellate court dealt with a similar issue: the effect of a severability clause on an exclusion barring coverage for "liability which results directly or indirectly from the actual, alleged or threatened sexual molestation of a person." 178 Wis. 2d 719, 505 N.W.2d 418, 420 (Ct. App. 1993). But the court's analysis focused on another applicable exclusion, an intentional acts exclusion, and never specifically analyzed the sexual molestation exclusion in light of the severability clause. *See id.* at 420-22. For the same reason, we do not discuss other cases cited by the parties further: *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. Dist. Ct. App. 1994) (intentional acts exclusion); *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224 (1998) (intentional acts exclusion); *Johnson v. Allstate Ins. Co.*, 1997 ME 3, 687 A.2d 642 (1997) (intentional acts exclusion); and *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 695 A.2d 566 (1977) (business pursuits exclusion).

[19] *Nw. G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 183 (N.D. 1994) (quoting *Nat'l Ins. Underwriters v. Lexington Flying Club*, 603 S.W.2d 490, 492 (Ky. App. 1979)). The exclusion read, " '[T]he bodily injury and property damage coverage

The reasoning of a Missouri appellate court is also persuasive. In *American Family Mutual Insurance Co. v. Moore*,[20] the court considered a business pursuits exclusion for bodily injury or property damage "arising out of business pursuits of any insured . . . by an insured . . . ."[21] That court held that a severability clause does not negate an unambiguous exclusion clause.

> Because an insurance contract is an agreement between parties that should be interpreted in a manner consistent with the expressions therein, the policy before us unambiguously expresses an intention to deny coverage to all insureds when damage is the result of a business pursuit. The purpose of the severability clause is not to negate the plainly worded meaning of the business exclusion clause.[22]

¶10 We are aware of the cases holding that a severability clause limits an exclusion for certain acts by "an" or "any" insured to the person who did the excluded act so that an insured who did *not* engage in the excluded activity will be covered.[23] But, as a Massachusetts court recognized, this interpretation makes the words "an" and "any" in the policy superfluous.[24] Our rules of construction do not permit us to read an insurance policy that way because we must give effect to every provision and cannot create ambiguities in the language.[25] We therefore do not find these cases persuasive.

---

provided under this endorsement does not apply: a. to bodily injury or property damage arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an insured, an insured's employee or any other person involved in any capacity in the day care enterprise . . . .' " *Id.* at 180.

[20] 912 S.W.2d 531 (Mo. Ct. App. 1995).

[21] *Id.* at 533.

[22] *Id.* at 534-35.

[23] *See, e.g., Premier*, 632 So. 2d at 1057; *Litz*, 695 A.2d at 572; *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (1986).

[24] *See Worcester*, 398 Mass. 240.

[25] *Ruiz*, 134 Wn.2d at 721; *Peasley*, 131 Wn.2d at 423-24.

¶11 We hold that, under the rules governing interpretation of insurance contracts, the purpose of the severability clause is not to negate the plainly worded child molestation exclusions in these policies. "We do not cover . . . injury . . . arising out of the actual . . . molestation of a child by any . . . insured" means what it says, and no reasonable insured could expect that he or she had contracted to be covered for damage an insured causes when one of them molests a child. We do not here adopt a sweeping rule that specific exclusions always prevail over general language in an insurance contract. We conclude only that the severability clauses in these policies do not create an ambiguity in or negate the specific child molestation exclusions at issue here.[26] Because we hold that the child molestation exclusions bar coverage for the Caroffs, we do not need to reach the issue of the effect of the severability clauses on the intentional acts exclusions in the Farmers policies.

¶12 Finally, Farmers stated in a footnote in their brief that the Caroffs' motion was actually only for *partial* summary judgment and that issues about the enforceability of the consent settlement and judgment would remain if the Caroffs prevailed on the coverage issue. Because the Caroffs have not prevailed, we need not remand to the trial court. The enforceability of the consent settlement and judgment are moot in the absence of coverage. For the same reason the Caroffs are not entitled to attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*[27]

---

[26] Although our holding is confined to the explicit sexual molestation exclusions at issue here, we note that other courts have reached commensurate results in evaluating other kinds of exclusions deemed unambiguous. *See, e.g., Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990) (intentional acts exclusion); *Swentkowski v. Dawson*, 881 P.2d 437 (Colo. Ct. App. 1994) (intentional acts exclusion); *Johnson*, 687 A.2d 642 (intentional acts exclusion); *Am. Motorists Ins. Co. v. Moore*, 970 S.W.2d 876 (Mo. Ct. App. 1998) (exclusion for bodily injury to an insured); *Am. Family Mut. Ins. Co. v. Copeland-Williams*, 941 S.W.2d 625 (Mo. Ct. App. 1997) (intentional acts exclusion).

[27] 117 Wn.2d 37, 811 P.2d 673 (1991).

¶13 Affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied at 141 Wn.2d 1006 (2000).