**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,**

v.

**William S. KIM; Kay Kim; Lawrence Kim, a minor; and Tae C. Choi Defendants.**

Civ. No. 99–00728 ACK.

United States District Court, D. Hawai'i.

Sept. 26, 2000.

Richard B. Miller, Tom & Petrus, Honolulu, HI, for Allstate Insurance Company.

Thomas D. Collins, III, Chester Kanai, Brian M.C. Pang, Honolulu, HI, for William S. Kim, Kay Kim, Lawrence Kim, Tae C. Choi.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT

KAY, District Judge.

#### BACKGROUND

This action stems from a homeowners insurance policy claim arising from an alleged assault by the policyholders' minor son, for which Allstate Insurance Company ("Plaintiff") asserts there is no coverage.

Defendant Tae Choi alleges that on October 14, 1997, Defendant Lawrence Kim ("Lawrence"), the minor son of Defendants William Kim ("Mr.Kim") and Kay Kim ("Mrs.Kim"), entered her apartment and assaulted her. Ms. Choi brought an action alleging such facts in the Circuit Court of the First Circuit of Hawaii on June 29, 1998, naming Lawrence and Mr. and Mrs. Kim as defendants. Ms. Choi further alleged that the Kims negligently failed to properly discipline their son or to obtain medical and/or psychological assistance for him and ratified and consented to their son's wrongful conduct. Ms. Choi is seeking general, special, and punitive damages in this underlying action.

The Kims tendered defense of the underlying action to Plaintiff under a Deluxe Homeowners Policy ("Policy") and a Comprehensive Personal Liability Policy ("Comprehensive Policy") issued by Plaintiff. Plaintiff provided a defense under a reservation of rights.

Plaintiff filed a claim against Mr. and Mrs. Kim, Lawrence Kim, and Ms. Choi on October 21, 1999, seeking a declaration from this Court that Plaintiff has no duty to defend or indemnify the Kims for claims arising from Lawrence's alleged attack of Ms. Choi.

The Kim's Homeowners Policy was in effect on the date of Lawrence's alleged attack upon Ms. Choi.[1] The Policy contained the following provision regarding liability coverage:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> **We** may investigate or settle any claim or suit for covered damages against an **insured person.** If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted our limit of liability.

---

1. Policy number 007640789 was issued to William Sang and Kay Keung Lae Kim.

Policy, at 27. The Policy further provided the following exclusions for claims arising from the intentional and/or criminal acts of an insured:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:

a) such **insured person** lacks the mental capacity to govern his or her conduct;

b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected . . . .

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

*Id.*

The Policy contains the following Joint Obligations clause:

The terms of this policy impose joint obligations on persons defined as an **insured person.** This means that responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person.**

*Id.* at 5. An "insured person" is defined as the policyholder and any relative or dependent person in the policyholder's care that is a resident of the policyholder's household. *Id.* at 3.

Allstate also issued a Comprehensive Personal Liability Policy ("CPL Policy") to the Kims, which was in effect on the date of the alleged attack.[2] This policy provided for coverage of the following losses:

**We** will pay all sums arising from a loss which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person.** If an **insured person** is sued for these damages, we will provide a defense with counsel of **our** choice. **We** will defend even if the allegations are not true. **We** are not obligated to pay any claim or judgment or defend any suit after we have exhausted the limit of **our** liability.

CPL Policy, at 5. The CPL Policy does not cover losses arising from intentional and/or criminal acts of an insured person:

1. **We** do not cover any **bodily injury** or **property damage** which may reasonably be expected to result from the intentional or criminal acts of an **insured person** or which is in fact intended by an **insured person.**

*Id.* at 5.

Additionally, the CPL policy contains a Limits of Liability Clause, which is referred to by the Defendants as a severability clause. It states:

4. **Our Limits of Liability**

This insurance applies separately to each **insured person.** Regardless of the number of **insured person,** injured persons, claims, claimants or policies involved, **our** total liability under the **Family Liability protection** coverage for damages resulting from one loss will not exceed the limit whose on the declarations page . . . .

*Id.,* at 11.

The CPL Policy does not contain a Joint Obligations clause. An insured person is defined as the policyholder and if a resident of the policyholder's household, any relative and any dependent person in the policyholder's care. *See id.* at 2.

Plaintiff filed the instant Motion for Summary Judgment on June 6, 2000, asserting that the claims asserted against the Kims in the underlying action are not covered under the insurance policies at issue because such claims involve intentional and/or criminal conduct on the part of an insured and are therefore excluded

2. Policy Number 076564798 was issued to William Sang Kim.

from coverage. Plaintiff's motion was supported by a Concise Statement of Facts, filed the same day.

Defendant Choi filed a Memorandum in Opposition on August 4, 2000, arguing that because the CPL Policy does not contain a Joint Obligations provision, the CPL does not bar coverage of Mr. and Mrs. Kim, who did not engage in the alleged intentional and/or criminal acts. Ms. Choi concedes that the Homeowners Policy precludes coverage for Mr. and Mrs. Kim's negligence and/or vicarious liability for the claims against them arising out of the criminal and/or intentional acts of their son, and the CPL Policy bars coverage to Lawrence. Ms. Choi argues alternatively that the exclusionary clauses violate public policy. Defendant Choi supported her opposition with a Concise Statement of Facts, filed July 7, 2000.

The Kim Defendants also filed a Memorandum in Opposition on August 4, 2000. The Kims argue, inter alia, that the intentional acts exclusion in the policies at issue are contrary to public policy and are therefore void. The Kims also assert that Lawrence is entitled to coverage because he was acquitted of the criminal charges "due to a successful identification defense."

Ms. Choi filed a Cross–Motion for Partial Summary Judgment on July 11, 2000, seeking a declaration from this Court that Plaintiff is obligated to indemnify the Kims under the CPL Policy and pay insurance benefits up to $300,000 to Ms. Choi for any award of damages, should Ms. Choi ultimately prevail on the merits in the underlying action.

The Kim Defendants also filed a Cross–Motion for Summary Judgment on June 30, 2000, supported by a Concise Statement of Facts. They argue that Plaintiff has a duty to defend and indemnify them in the underlying case according to the CPL policy.

Plaintiff filed a combined Reply Memorandum in Support of its Motion for Summary Judgment and Memorandum in Opposition to Defendants' Cross Motions for Summary Judgment on August 18, 2000.

The Court heard these motions on August 30, 2000, and reserved its ruling in light of Defendant Choi's Objection to the Exercise of Discretionary Jurisdiction, filed on August 29, 2000, heard on September 19, 2000. After DENYING Defendants' Objection to the Exercise of Discretionary Jurisdiction, the Court now GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Cross–Motion for Summary Judgment.

## STANDARD OF REVIEW

### Summary Judgment

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some

"significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250—51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.*, 809 F.2d at 630–31.

## DISCUSSION

### I PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Court turns first to Plaintiff's Motion for Summary Judgment. Plaintiff argues that there is no coverage under either the Homeowners or the CPL policy for the claims asserted against Lawrence and Mr. and Mrs. Kim. The Court will address the claims against each party in turn.

#### A. Neither the Homeowners Policy Nor the CPL Policy Provides Coverage for Lawrence as There Is No Coverage for Lawrence Under Either Policy

Plaintiff first argues that it has no duty under either the Homeowners Policy or the CPL Policy to defend or indemnify Lawrence in the underlying lawsuit. Defendant Choi agrees. *See* Def's Mem. Opp. at 1 ("CHOI agrees that if LAWRENCE is an insured under the subject insurance policies, that ALLSTATE has no obligation to defend nor indemnify LAWRENCE for any of the tortious conduct committed by him as alleged in the underlying action.").

■ The Kim Defendants, however, argue that because Lawrence was acquitted of second degree attempted murder and first degree burglary charges related to the alleged assault, due to a successful identification defense, Lawrence is entitled to Plaintiff's defense and indemnification in the related civil suit. The Kim Defendants do not explain any further why such an acquittal would entitle Lawrence to coverage, other than to state that the identity of the assailant is an issue.

■ This Court does not agree that Lawrence's acquittal entitles him to a defense and indemnification by Plaintiff in the related civil suit. In Hawaii, "[t]he duty to defend is limited to situations where the pleadings have alleged claims for relief [that] fall within the terms for coverage of the insurance contract. Where pleadings fail to allege any basis for

recovery within the coverage clause, the insurer has no obligation to defend." *Pancakes of Haw., Inc. v. Pomare Properties,* 85 Hawai'i 286, 944 P.2d 83, 89 (Ct.App. 1997) (internal quotations omitted); *accord, Commerce & Industry Ins. Co. v. Bank of Haw.,* 73 Haw. 322, 832 P.2d 733, 735 (1992); *see also, Bayudan v. Tradewind Ins. Co., Ltd,* (Haw.Ct.App.1998) ("The duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract."). A mere denial of the allegations contained in the complaint does not require coverage unless such a denial raises the potential for coverage. *See, e.g., AIG Hawaii Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 851 P.2d 321, 329 (1993) (finding insured's contention that he did not intentionally cause bodily injury meant that the injury resulted from an "accident," rather than an intentional act, thus raising the potential for coverage and implicating the insurer's duty to defend); *Bayudan,* 957 P.2d at 1072 (finding insured's contention that he did not kidnap and rape plaintiff did not bring alleged victim's claims within scope of coverage, so no duty to defend).

Here, Ms. Choi's pleadings assert, inter alia, that Lawrence "with great force and violence attacked [Ms. Choi] and struck [her] repeatedly in the face, on her head and body with a hammer and his fists and feet." Underlying Compl. ¶ 5. The pleadings clearly allege intentional and criminal acts, and thus do not allege any basis for recovery within the coverage clause with respect to Lawrence—an insured person as defined by both policies, *see* Policy, at 3; CPL Policy, at 2—as injuries or damage caused by an insured's intentional or criminal acts are excluded from coverage in both policies. *See* Policy, at 27 (stating that any bodily injury or property damage caused by the intentional or criminal acts of any insured person is not covered, even if the insured is not convicted); CPL Policy, at 5 (stating that any bodily injury or property damage caused by the intentional or criminal acts of any insured person is not covered). Moreover, Lawrence's deni-

al of the allegations asserted in the pleadings does not raise the potential for coverage. *See Bayudan,* 957 P.2d at 1072.

In sum, because Lawrence is an insured under the policy, and the acts alleged in the pleadings are intentional and criminal in nature, Plaintiff has no duty under either policy to defend or indemnify Lawrence for any claims arising from the bodily injury allegedly inflicted by Lawrence. Accordingly, Plaintiff is entitled to summary judgment as to its duty to defend or indemnify Lawrence.

**B.** ***Plaintiff Has No Duty Under the Homeowners Policy to Defend or Indemnify Mr. and Mrs. Kim in Connection with the Choi Action***

■ Plaintiff next argues that it has no duty under the Homeowners Policy to defend or indemnify Mr. and Mrs. Kim in the underlying lawsuit. The Kim Defendants and Defendant Choi conceded at oral argument that the language of the exclusionary clause in the Homeowner's policy precludes coverage for Mr. and Mrs. Kim in the underlying action. The Kim Defendants, however, assert that this Court should strike the language which precludes coverage by finding that exclusionary clause violates public policy and is therefore invalid. The Court disagrees.

An insurance policy's exclusion of coverage for damage caused by the intentional acts or omissions of an insured is consistent with the sound public policy that a wrongdoer should not profit from his own wrongdoing or be indemnified against the effects of his wrongdoing. *See American States Ins. Co. v. Borbor by Borbor,* 826 F.2d 888, 894 (9th Cir.1987) ("The public policy underlying [California's statute barring indemnification for an insured's intentional wrongdoing] is to prevent encouragement of wilful torts. [Such statute] is a codification of the jurisprudential maxim that no man shall profit from his own wrong."). "The public policy against insurance for losses resulting from such acts is usually justified by the assumption that

such acts would be encouraged, or at least not dissuaded, if insurance were available to shift the financial burden of the loss from the wrongdoer to the insurer." *Borbor*, 826 F.2d at 894.[3]

Such a policy supports the exclusions at issue in the instant case. The Homeowners Policy excludes coverage for intentional or criminal acts, thus disallowing an insured to be indemnified against the effects of any intentional wrongdoing. Defendants argue, however, that where the exclusion applies to claims against an insured for damage caused by the intentional conduct of the insured's child, and the insured is vicariously liable under statute for the torts of his or her child, the exclusion violates public policy. The Court, however, disagrees, as the policy of preventing the encouragement of wilful torts applies even in the face of a parental liability statute. Indeed, such a combination will prevent the encouragement of wilful torts of children and parental indifference thereto.

Defendants point to a decision by Judge Pence, wherein the Court referred to the imposition of vicarious liability without fault as being justified by the policy decision "that the person held liable is in a position to shift the costs of an injury to the public at large through the purchase of liability insurance." *Bryan v. Kitamura*, 529 F.Supp. 394, 400 (D.Haw.1982). Judge Pence continued: "This rationale certainly holds true in the case of the Hawaii parental liability statute.... The child's parents ... are in a position to spread the cost of the injury to the public at large through the purchase of liability insurance." *Id.* at 400. The Court disagrees that this opinion equates to a finding that public policy

would preclude insurers from excluding intentional acts from coverage where a parental liability statute exists, especially in light of the strong public policy supporting intentional acts exclusions.

Because the Court has found the exclusionary clause at issue consistent with public policy, Plaintiff has no duty under the Homeowners Policy to defend or indemnify Mr. and Mrs. Kim for claims arising from the bodily injury allegedly inflicted by Lawrence. Accordingly, the Court GRANTS Plaintiff's motion for summary judgment as to Plaintiff's duty to defend or indemnify Mr. and Mrs. Kim under the Homeowners Policy.

### C. Plaintiff Has No Duty Under the CPL Policy to Defend or Indemnify Mr. and Mrs. Kim in Connection with the Choi Action

■ Plaintiff argues, and Defendants dispute, that there is no coverage under the CPL in favor of Mr. and Mrs. Kim for claims arising from the alleged assault. Defendant Choi contends that the CPL policy provides coverage for Mr. and Mrs. Kim because the policy provides that it "applies separately to each insured person." Thus, Defendant Choi argues that because Mr. and Mrs. Choi committed no intentional criminal act, the exclusion clause, when read in light of the Limits of Liability clause, does not exclude coverage of Mr. and Mrs. Choi for their son's intentional acts.

The Limits of Liability clause [4] at issue reads:

4. **Our Limits of Liability**

This insurance applies separately to each insured person. Regardless of the

---

3. The Court notes that the Hawaii Supreme Court has frequently followed California Courts in rendering opinions on insurance matters. *See Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996); *Sentinel Ins. Co. v. First Ins. Co. of Hawaii*, 76 Hawai'i 277, 875 P.2d 894 (1994); *State v. Kupau*, 76 Hawai'i 387, 879 P.2d 492 (1994); *Wailua Associates v. Aetna Casualty and Surety Co.*, 183 F.R.D. 550, 563–64 (1998).

4. The Court notes that, as denominated, this is a limits of liability provision. However, various courts refer to such a provision as a separation clause or a severability clause. This Court will refer to the terms interchangeably.

The Court further notes that while, on one hand, the word "separation" appears within the clause, on the other hand, the word "severability" does not.

number of **insured person, injured persons,** claims, claimants or policies involved, **our** total liability under the **Family Liability protection** coverage for damages resulting from one loss will not exceed the limit whose on the declarations page....

CPL Policy, at 11.

This provision clearly was intended to afford each insured a full measure of coverage up to the policy limits, not to negate the policy's intentional acts exclusion. Indeed, the majority of courts addressing such a clause in connection with an exclusionary clause worded "any insured" or "an insured" have held that the exclusionary clause expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds, despite the presence of a severability clause.[5] Thus, the majority opinion holds, as does this Court, that a severability clause does not prevent an intentional acts exclusion from barring coverage for the alleged negligence of an intentional tortfeasor's coinsureds. *See, e.g., Employers Mutual Co. v. G.D.,* 894 F.2d 409, 1990 WL 4854 (9th Cir. Jan.24, 1990) (noting that despite existence of severability clause, exclusion clause prohibiting coverage of "an insured" should apply)[6]; *Carbone v. General Accident Ins. Co.,* 937 F.Supp. 413 (E.D.Pa. 1996) (noting that, consistent with majority opinion, recovery is precluded for innocent co-insureds despite separation clause providing that insurance "applies separately to each insured against whom claim is made or 'suit' is brought," where exclusion clause refers to "any" insured); *Caroff v. Farmers Ins. Co. of Wa.,* 98 Wash.App. 565, 989 P.2d 1233, 1237 (1999) (holding that severability clauses, providing that

the policies in question applied to each insured separately, did not negate exclusions of coverage for injury arising out of actual, alleged, or threatened child molestation by "any insured," and therefore teenager's parents were not entitled to coverage); *Johnson v. Allstate Ins. Co.,* 687 A.2d 642, 644–45 (Me.1997) (holding that under policy excluding coverage for bodily injury intentionally caused by "an insured person," coverage for damages intentionally caused by "any" insured person is unambiguously excluded, despite existence of severability clause); *American Family Mut. Ins. Co. v. Copeland-Williams,* 941 S.W.2d 625, 629–30 (Mo. App.1997) (determining that under exclusionary clause, which excluded coverage for injury expected or intended from standpoint of "any" insured, wife was not covered for any negligent acts that stemmed from the husband's alleged sexual molestation of step-granddaughter, despite severability clause); *Oaks v. Dupuy,* 653 So.2d 165 (La.Ct.App.1995) (finding separation of insureds clause did not alter the scope of the automobile exclusion phrased in terms of "any insured"); *American Family Mut. Ins. v. Moore,* 912 S.W.2d 531 (Mo.App.1995) (holding that, where policy excluded claims for bodily injury or property damages "arising out of business pursuits of any insured," the severability clause did not negate "the plainly worded meaning of the business exclusion clause," thus precluding coverage to innocent co-insureds); *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 752 (Colo.1990) (holding an exclusion for intentional conduct of "any insured" barred coverage of parents for their son's vandalism, despite a severability clause).

5. Defendant Choi relies on a line of cases that have found severability clauses to create ambiguity in the meaning of exclusion clauses. *See Worcester Mutual Insurance Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986); *Northwestern National Ins. Co. v. Nemetz,* 135 Wis.2d 245, 400 N.W.2d 33 (Ct.App.1986); *Northwest G.F. Mutual Insurance Co. v. Norgard,* 518 N.W.2d 179 (N.D.1994). The Court finds the majority line of cases, however, to be the better reasoned and more in line with

the rules of contract interpretation of the Hawaii state courts.

The Court further notes that in each of these cases, relied on by the Defendant, the clause to be interpreted was denominated a "severability" clause, unlike the Limits of Liability Clause this Court must interpret.

6. The Court notes that it is not relying on this unpublished decision, pursuant to Federal Rule of Appellate Procedure 36–3.

Indeed, to hold otherwise would effectively nullify exclusions from coverage in any case involving coinsureds and a policy with a severability provision. For, "[i]t is inconceivable that parties to a policy would include clauses specifically excluding coverage for claims based on certain types of conduct, but intend those exclusions to have no effect in any case involving claims against coinsured spouses." *California Casualty Ins. Co. v. Northland Ins. Co.,* 48 Cal.App.4th 1682, 56 Cal.Rptr.2d 434, 442 (1996).

The Hawaii Supreme Court has not ruled on the issue of the interplay between a severability clause and an exclusion clause, therefore this Court is required to predict how the Hawaii Supreme Court would rule and base its decision on that analysis. *See Aetna Cas. & Sur. Co. v. L.K. Comstock & Co.,* 684 F.2d 1267 (9th Cir.1982). Hawaii state courts interpret insurance contracts according to the general rule of contract interpretation that contracts should be interpreted according to their plain, ordinary, and accepted sense in common speech, unless it appears from the policies that a different meaning is intended. *See Dawes v. First Ins. Co. of Hawaii, Ltd.,* 77 Hawai'i 117, 883 P.2d 38 (1994). Additionally, the Hawaiian Supreme Court has cautioned courts that they "must not create ambiguity where none exists." *Sentinel Insurance Co. v. First Ins. Co. of Hawaii,* 76 Hawai'i 277, 875 P.2d 894 (1994).

The plain, ordinary, and accepted sense in common speech meaning and interpretation of the exclusion clause is that it is a specific and tailored provision designed to notify the policy holders that they are not covered for any intentional or criminal act and to so limit coverage. The plain, ordinary meaning of the Limits of Liability Clause is that it spreads the protection of the insurance policy to all the insureds up to the policy limits and is not designed to negate the exclusions which are plainly worded. *See California Casualty Insurance Co.,* 56 Cal.Rptr.2d at 442. This Court will not counter the Hawaii state courts rules of contract interpretation by reading ambiguity into the Limits of Liability Clause or creating ambiguity in the Exclusion Clause.

In sum, the severability clause does not affect the policies' intentional acts exclusion which unambiguously excludes coverage for intentional or criminal acts; thus, Plaintiff has no duty under the CPL Policy to defend or indemnify Mr. and Mrs Kim in connection with the Choi action. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED.

## II  DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

Because the Court granted Plaintiff's Motion for Summary Judgment, and in doing so addressed the arguments contained in Defendants' Cross Motions for Summary Judgment, the Court DENIES Defendants' Cross Motions.

### CONCLUSION

Based on the foregoing authorities, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Cross Motions for Summary Judgment.

IT IS SO ORDERED.